your argument on the motion scheduled to be heard today, United States v. Donziger, No. 19-4155. Your Honors, good morning. For Mr. Donziger, Andrew Frisch. Where the reality of a defendant's actions are so at odds with theories of flight, deference should not be afforded, and unnecessary in what appears to be a truly unprecedented restriction for a misdemeanor. Ms. Glavin says, well, Judge Preska hasn't chimed in on whether or not this is a misdemeanor or a felony, but that's pure speculation and implausible. There's nothing on the record that says that she considers it a felony. And it makes no sense that Judge Preska would ignore Ms. Glavin's view of the case. That having been arranged for by Judge Kaplan, Judge Preska, that is, that she would permit a jury, as opposed to herself, to review Judge Kaplan's charges of contempt. How is a condition of release reasonable when, based on speculation, that is just implausible under the circumstances of this case? What are the restraints that Mr. Donziger is under right now? I want to make sure I understand precisely what restraints he is under now. I understand he's walking his child to school daily. He's on home confinement, is that right? And he's not supposed to leave the jurisdiction. He's electronic. He is on home confinement. And I suppose one might think, well, he's not in prison, so why is he complaining? And here's why he's complaining. Because it's a restriction. Because it's unnecessary. Because he's already been on home confinement twice as long for the House arrest that was imposed in the only case that we can find where an attorney in this circuit was found guilty of criminal contempt. The statute, Bail Reform Act, requires that the restriction be reasonable. And under these circumstances, you have someone who, after the charges, was in Canada, came here to the courthouse across the street. He contacted Magistrate Lehrberger and said, you know, we have this civil contempt hearing scheduled for next week. Let's put that off because of this new criminal charge. He filed a brief in this Court, a pro se appeal that's being argued on March 16th, which is his appeal from the civil contempt on which the criminal contempt is based. And since the criminal charge, he's appeared at his disciplinary hearing for four days and testified. What's the schedule for the criminal proceedings now? The criminal trial is now scheduled for June 15th of 2020. So by that time, Judge Carney, he will have been on home confinement for 11 months. I agree, it's not as bad as being in prison. But the Bail Reform Act requires that we impose reasonable restrictions. And he still has failed to produce documents that the judge required him to produce. Is that right? There is a so-called forensic protocol that requires that he turn over certain documents. We have secured those. We have imaged the devices and those are secure. Our view is that under the law, he does not have to turn those over because it contains privileged and constitutionally protected materials on pain of contempt. He need not do that. That's right. And he has not turned those over pending the criminal trial before Judge Preska, on my advice, having made sure that we have secured the devices, having imaged them and keeping them secure. But that's the merits of the criminal case. For 27 years, he's been litigating these issues and he's been litigating the issues of contempt for a year and a half. One of the footnotes in the reply papers lists just some of the submissions he's made pro se, litigating a case, appearing at a disciplinary hearing, showing up, filing a pro se brief. These are the opposite of flight. So you're saying that no restraint should be imposed. Is that right? Well, I would, that would be my dream request, that no restriction, that it be released on recognizance. But here you have the pretrial services officer who is in direct, almost daily contact with him, telling Judge Preska, you know what, this is a voluntary on the pretrial services officer. All we really need here, at most, is a monitored curfew. So to the extent that I'm an advocate, Ms. Glavin is an advocate, and we look at things from the point of view of our respective agendas, you have pretrial services, an independent agency, telling Judge Preska, you know, I've observed this guy day in and day out for the past however many months. I understand Ms. Glavin's arguments about why he's, why there's a concern here, but Judge Preska, you should put him on a monitored curfew. That's all that's necessary. So the answer to your question is, if this were the arraignment, I'd be arguing for release on his own recognizance. But given where we are, and given the resistance to... What do you mean by a monitored curfew? So, as... Phones in? I beg your pardon, Judge? Phones in every day? No, as Officer Harmon explains it to the court and explains it to me, what a monitored curfew is, is that he remains on the bracelet or the anklet, but he's free to be at liberty, except he has to report, I don't remember the exact times of day that she told us, but it's in the record. I believe it's, he has to be home by 8 or 10 o'clock and can go out the next morning to walk his son to school. But he remains, under that view, he remains on the bracelet or the anklet, as the case may be. He doesn't have any employment obligations at this time? At this time, he does not. So the reason for the, for wanting to be not in home confinement is basically to take his son to school? Take his son to school to have the liberty to go about his daily activities, to look for work, to seek employment, to do the work he's permitted to do with regard to the enforcement of the Ecuadorian judgment outside the United States, on which he was working at the time of arraignment. But it's not his burden necessarily, Judge Walker, to explain why he should have, not have this restriction. It's up to the government, in this case Ms. Glavin, to argue why he should have the restriction and why the restriction and why any restriction should be reasonable. And it seems to me that pretrial services, at the most, the monitored curfew is all that could arguably be necessary under these circumstances. All right. Thank you very much. We'll hear from the government then. May it please the Court, my name is Rita Glavin and I represent the United States in this appeal and in the District Court proceeding below. This Court should affirm Judge Preska's determination as to the imposition of the appropriate bail conditions. Because on November 25th, when Judge Preska found that Mr. Donziger posed a risk of flight and should remain on home detention with electronic monitoring, she did not commit clear error or any error. This Court reviews the District Court's determination regarding bail conditions for clear error. Because the District Court's determination is based largely on predicate factual findings and it, because the District Court's determination as to the weight to be accorded the various factors under 18 U.S.C. section, yes. The argument that your adversary just made to us, also made before the District Court. With respect to? Liberty wearing a bracelet, being on, being able to leave the home. With, in front of the District Court, Your Honor, Judge Preska specifically on the bail condition on home detention, when we were first in front of Judge Preska on August 6th, Judge Preska carved out on the home detention condition that Mr. Donziger be allowed to leave the home so he could fulfill family obligations. So he is allowed to leave the home for purposes of employment, for purposes of attorney visit, for purposes of religious reasons, and for purposes of family obligations or other activities that have to be improved in advance by pretrial services. Such as taking his son to school. He takes his son to school every day, which is approximately a mile away from his apartment. He walks in there. What are we to make of the comments made on a voluntary basis, I guess, by the pretrial services individual who's responsible for Mr. Donziger? Yes, Your Honor. So the pretrial services officer initially made the recommendation for home detention with electronic monitoring on August 6th. We then were back in front of Judge Preska on November 25th because the pretrial services officer, as I understand it, where a defendant has been compliant with their conditions, will look to eliminate home detention in favor of a curfew, which is what happened here. That it's not unusual for that to happen if a defendant has been compliant for pretrial to make that recommendation. However, my understanding as well, and this is reflected in my November 21st letter to Judge Preska, pretrial services as well does not purport to know all of the underlying facts and evidence in the case. It's that pretrial services was satisfied with Mr. Donziger's condition and how he's been compliant for three months as of that period of time. In November? What exactly is the risk of flight here? So, Your Honor, with respect to the risk of flight, Judge Preska made several findings on this. First is that Mr. Donziger has violated a number of court orders over the course of the last two years. Starting with, he was directed to provide certain documents as of June 15th of 2012. Your Honor, I believe it does go to the issue of risk of flight. It goes to the history and characteristics of a particular defendant. And as to risk of flight, if the defendant Every defendant, by definition, has allegedly done something he or she is not supposed to do. So the fact that you can point to bad events or bad conduct doesn't, as Judge Walker suggested, go to flight. In this particular circumstance, Your Honor, it's not just a matter of, you know, goes to whether or not you will comply with your conditions, whether you're concerned about leaving the country to face the charges. Well, wait a minute. Yeah. Your adversary said that he's doing this on counsel's advice, that there's a legal issue involved before he has to turn over the documents. So if he's legitimately resisting turning over a document and may have a legal right to do that, why would that be used against him? I actually want to separate that out, Your Honor, with respect to the documents that he has been ordered to turn over. The constitutional argument that Mr. Donziger raised with respect to those documents is a First Amendment argument. Judge Kaplan repeatedly rejected that argument. There was no request for a stay pending appeal. Mr. Donziger just didn't turn them over. And to this day, it's not just not turning over the devices, but there are documents that he has not turned over on the basis of First Amendment that has been rejected by Judge Kaplan below. In addition, on the risk of flight. Would there be an opportunity for him to appeal that particular point independently of the actual case as a preliminary matter in a locatory appeal, or would it be part of the ultimate appeal? Well, there are currently three appeals pending before this Court in the underlying civil case. There is an appeal of the money judgment that Judge Kaplan issued an order directing taxation of costs after the RICO judgment proceedings, $800,000. Mr. Donziger appealed that. That's fully briefed and pending before this Court. There was a second appeal that went from Judge Kaplan's refusal to dismiss the contempt claims by Chevron. That was appealed from fully briefed and is pending before the circuit. And then the third appeal is from Judge Kaplan's May 23rd, 2019 findings of civil contempt, which is also pending before this Court. And I believe argument is currently scheduled for next month on those appeals. But with respect to a number of the issues below and not turning over documents, it would be the government's position that Mr. Donziger has waived any right to challenge that. For instance, with respect to the order that he turn over his computers for imaging, that order was done on March 5th of 2019, and Mr. Donziger didn't file a notice of appeal or seek appellate review of that. And with respect to the civil contempt finding that occurred on May 23rd of 2019, Judge Kaplan found Mr. Donziger in civil contempt for failure to provide a list of his devices and turn them over. Mr. Donziger, in his brief challenging the civil contempt, did not challenge those civil contempt findings. And, Judge Parker, if I could get back to your point on the risk of flight. What I think was particularly important in the district court's finding on risk of flight is Mr. Donziger's unique and longstanding ties to Ecuador, for which I don't think the parties disagree, does not have a reliable extradition process. And the ties to Ecuador are deep. They are high-level officials and to community leaders there. And it's been longstanding. I think absent those ties and strong ties to Ecuador, the bail conditions may have been different. Thank you very much. Thank you. Thank you. I think we have the arguments. We'll try to get you a decision promptly.